# EDWIN A. WILLNER v. WALLINDER SASH & DOOR COMPANY AND OTHERS.[1]

July 18, 1947.

No. 34,392.

[1]Reported in 28 N. W. (2d) 682.

362

*William P. Harrison, John Heitmann,* and *Abbott, MacPherran, Dancer & Montague,* for appellant.

*Fryberger, Fulton & Boyle* and *Edwin A. Martini,* for respondent.

JULIUS J. OLSON, JUSTICE.

This was an action to foreclose a mechanic's lien upon certain real estate belonging to the corporate defendant. The issues to be determined here are limited to the respective claims and denials of plaintiff and the corporate defendant. The complaint is in the usual and standard form in mechanics' lien cases. Defendant answered, setting forth in substance that an agreement had been made between it and plaintiff whereby plaintiff was to construct an addition to defendant's manufacturing plant. Plaintiff was to furnish the labor and equipment to do the job, and defendant was to furnish the material. Plaintiff's compensation was to be upon a cost-plus percentage basis. By its separate pleading, defendant also counterclaimed for damages amounting to $165,500, which has for its basis the claim that plaintiff negligently started a fire during the performance of his work and that he negligently permitted the fire so started to spread, thereby destroying defendant's entire plant, including the work then partly performed by him under his construction contract. Plaintiff replied, denying all new matter, averred that defendant was contributorily negligent in its effort to put out the fire, and that its efforts in this respect were so negligently performed as to cause, in large part at least, the loss sustained.

At the commencement of the trial, counsel stated that, while this was an action which would ordinarily be tried to the court without a jury, arrangements by counsel had been made to submit certain questions to the jury. The questions submitted and the answers thereto were as follows:

1. "Did the fire start as a result of any negligence of Mr. Willner or a member or members of the Willner crew?" The jury's answer was "Yes."

2. "Was the fire permitted to spread as a result of any negligence of Mr. Willner or a member or members of the Willner crew?" The jury's answer was "No."

3. "Was there any negligence on the part of Wallinder Sash & Door Co. or a member or members of its crew which contributed to the starting of the fire?" This question was answered by the court "No" as a matter of law.

4. "Was there any negligence on the part of the Wallinder Sash & Door Co. or a member or members of its crew which contributed to the spreading of the fire?" The jury's answer was "Yes."

In this connection, Mr. Boyle, of counsel for defendant, stated for the record:

"I think it was clearly understood by counsel that the question of independent contractor, or of employer and employee would be reserved for decision by the court, and the jury would be merely asked to decide the questions which I have read into the record. I don't know if there is anything to be added to that statement. The question of proximate cause is to be determined by the court.

"The Court: I understand it is for the jury to decide these questions alone?

"Mr. Boyle: Yes, the relationship of independent contractor and employer and employee and other questions are to be determined by the court afterwards."

No one questioned Mr. Boyle's statement. Thereupon and within the agreed limits, the trial proceeded. The resulting special verdicts have been recited.

There had been pre-trial conferences between counsel and the court. As a result of these, the jury issues were framed. The issues raised by defendant's counterclaim were to be first determined, and thereafter all other issues were to be tried to and disposed of by the court.

After the jury trial had been concluded and the special verdicts rendered, the court, on defendant's motion, vacated the jury's negative answer to the second question and substituted its own affirmative answer. It did the same thing with respect to the fourth question, substituting its own negative answer in place of the jury's affirmative finding.

When the court trial had been concluded, the court made findings adverse to plaintiff's theory as to defendant's liability, awarding, instead, $64,500 to defendant as damages under its counterclaim. After the usual motions had been made for amended findings or a new trial, judgment was entered in conformity with the findings, and it is from this judgment that plaintiff has appealed.

A brief résumé should be made of these findings. During the times herein material, defendant owned and operated upon its premises, the subject matter of plaintiff's action, a manufacturing plant. The controversy before the trial court and here arises out of and by reason of plaintiff's negligence in the performance of his contract, entered into between the parties on October 17, 1944, under the terms of which plaintiff agreed to construct for defendant an addition to its then functioning factory. For some time prior to the making of this contract, defendant had been engaged in the manufacture of army airplane cargo-loading bins, army tread ways and display fixtures, and other products. It had in its factory the machinery, equipment, tools, and materials necessary for the manufacture of the articles mentioned. In the construction job undertaken by plaintiff for the building of an addition to defendant's factory, plaintiff had full authority over the details and manner of performance of the work and the means and methods to be observed in the conduct thereof. Defendant had no such authority, nor did it attempt to exercise any such authority. While plaintiff was engaged in con-

structing the addition, defendant actively continued the operation of its old factory, wherein it manufactured the various things to which we have already referred. Its work was largely what is termed war work. On December 15, one of plaintiff's men, in doing his employer's work, negligently caused a fire in that portion of the structure then being built. Plaintiff and his crew negligently permitted the fire to spread so that the entire factory, both the old and new, together with the machinery, fixtures, and other property therein located, was wholly destroyed. The court, moreover, specifically found that the fire which destroyed defendant's factory and other property did not start as a result of any negligence on defendant's part; that the fire was not permitted to spread as the result of any negligence on the part of defendant or any of its employes, but, on the contrary, that "as a direct result" of plaintiff's negligence "in the starting of said fire and in permitting said fire to spread and destroy said factory and personal property, the defendant has been damaged in the sum of $64,500." Upon these facts, the court directed the entry of judgment that plaintiff had no cause of action under his lien, and that defendant was entitled to the damages mentioned.

Considerable time and testimony was devoted to the question of whether the relationship between plaintiff and defendant was that of master and servant. In its memorandum, the court expressed the opinion that plaintiff retained control over the new construction, not only as to what should be done, but also as to the method and manner of doing it, and that plaintiff himself apparently was of the opinion that he was an independent contractor, since he applied for a permit to construct the building, his application having been made by him personally and not as an agent or servant of anyone.

■ Plaintiff's first challenge is directed against the court's order setting aside and substituting its own answers to questions 2 and 4. In our approach to and consideration of this problem, it is well to bear in mind that the first finding plainly determined that the origin of the fire was caused by plaintiff's negligence. There is no doubt that this question finds abundant support in the evidence. That fact having been established, the jury's negative answer as to

the second question could have for its foundation either (1) that the fire started by plaintiff had in fact been put out, or (2) that an intervening cause had broken the original chain of causation so as to be no longer a proximate cause of what later happened. Since plaintiff had started the fire, he had the burden of showing that the fire had been extinguished or that a subsequent efficient and intervening cause had broken the original chain of causation so as to isolate his original negligent act as a proximate cause. The applicable principle is well stated in 4 Dunnell, Dig. § 7005, as follows:

"* * * Where, subsequent to the original negligent act, a new and independent cause has intervened, of itself sufficient to stand as the cause of the injury, such cause will be considered the proximate cause of the injury, and the original negligence too remote; but where there is a conflict in the testimony as to the facts constituting the intervening cause, the question is for the jury."

Directly sustaining that view is Peterson v. Martin, 138 Minn. 195, 164 N. W. 813. And so is Krippner v. Biebl, 28 Minn. 139, 9 N. W. 671, where this question arose and was determined adversely to what the plaintiff here contends for. There, the trial court had instructed the jury (28 Minn. 144, 9 N. W. 673):

"* * * I further charge you that if Biebl exercised proper care in putting out the fire on the evening it had been started, and after exercising such care he believed it safe, then he is not liable."

To that instruction the court added this qualification (28 Minn. 144, 9 N. W. 673):

"* * * I say if he put the fire out, he is not liable; but if he was negligent in the first instance in the setting and care of the fire, no amount of care or diligence afterwards exercised will exonerate him from liability."

On appeal, defendant claimed that the qualification was erroneous, and he sought reversal by reason thereof. But our holding was (28 Minn. 145, 9 N. W. 673) that the "charge requested was erroneous," because—

"* * * It ignores a negligent *setting* of the fire as a possible proximate cause of the injury; and, although the defendant may have been chargeable with such negligence, it makes his subsequent efforts to avert injury, and his own belief of his success, at the time, a defence, as a matter of law, to an action for the first negligence. The charge given, with the qualification, can only mean this: *If the defendant exercised proper care in extinguishing the fire* on the evening of the day it had been started, *and did actually extinguish it, he is not liable; but if he was negligent in the first instance, in the setting and care of the fire, no amount of care or diligence afterwards exercised will exonerate him from liability.* We think the instruction, as it must have been understood by the jury, was right." (Italics supplied.)

Cases from other jurisdictions sustain what we said in the Biebl case. In Sampson v. Hughes, 147 Cal. 62, 64, 81 P. 292, 293, the trial court instructed the jury:

" 'The court instructs you that if you believe from the evidence in this case that the plaintiffs suffered injury by any negligent act of the defendants in setting out fire, or by any negligent omission of the defendants in suffering any fire burning on their land to extend beyond their land, then the plaintiffs are entitled to a verdict for damages for the injury so suffered.'

"These instructions are, in our opinion, correct."

Hewey v. Nourse, 54 Me. 256; Ide v. Boston & Maine Railroad, 83 Vt. 66, 74 A. 401; and Wiley v. West Jersey R. Co. 44 N. J. L. 247, sustain the same theory.

■ We concur in the views expressed by the court in its memorandum in disposing of question No. 2.

"* * * The jury found that the fire was started as a result of the negligence of the plaintiff. The primary duty was on the plaintiff to see that the fire was extinguished before any damage was done. As I view it, the plaintiff failed in his duty and under all of the evidence that question should have been answered 'yes.' "

What has been said with respect to the previous question applies with equal force to No. 3, wherein the court determined upon the record that defendant had in no way "contributed to the starting of the fire." That determination is final, since the record permits of no other.

This leads to a consideration also of question No. 4. As we have stated, plaintiff had the burden of furnishing proof that he had put out the fire or that an adequate intervening cause had disrupted the chain of causation which he had originally set in motion. No other fire was started by anyone. Plaintiff's only point seems to be that in defendant's old factory there was a paint room, where its manufactured articles were painted or sprayed; that in doing this work paints, varnishes, and like material were kept there, as were its manufactured articles which had been recently painted or sprayed. This, he thinks, created a condition amounting to what might be termed a fire hazard and constituted a cause contributing to the disaster. His idea is that if a fire reached this room the nature of the contents of the room was such as to create a situation practically impossible of control. However, we have this obvious fact: Plaintiff knew that defendant was operating its old plant according to its former plan of operation. Each party knew what the other was doing. While defendant's engagements might be deemed hazardous, they were nevertheless in conformity with the joint efforts of the parties and pursuant to their agreement. The court's opinion was that there was nothing in what plaintiff now urges, his negligence having been shown, justifying his present claim that defendant's paint room constituted an intervening cause of the fire. There was what amounted to a hazardous situation, but, obviously, it was not the cause of the fire or the resulting loss. The court's finding is well sustained by the record.

■ Finally, plaintiff maintains "that the evidence compels the finding to the effect that appellant [plaintiff] was not an independent contractor but was a mere employee of respondent * * *." Our review of the record does not reveal that the court was wrong. The

test to be applied was recently stated in Larson v. Le Mere, 220 Minn. 25, 32, 18 N. W. (2d) 696, 700, in this form:

"The real test, however, 'as to whether a person is an independent contractor or an employe is whether the asserted employer, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner and means in which and by which the details of work are to be performed' * * * as distinguished from the right which every owner or general contractor has to supervise and coördinate the general work."

Under this test, the evidence here shown by the record leaves a clear field for the trier of fact. In determining the vital issue of proximate cause as here presented, we must bear in mind that "The question of proximate cause is to be determined by the court," and so also was "the question of independent contractor, or of employer and employee." In Wiley v. West Jersey R. Co. 44 N. J. L. 247, 252, the court aptly said:

"'* * * Now, the spread of the fire was a natural result of its kindling, and the failure to extinguish it was not, in any just sense, an efficient cause of its spreading; it was merely the absence of prevention. Although that failure might be culpable, yet it neither added to the original force nor gave it new direction, and hence, in tracing back the line of causation, it would not be noticed as a potent agency. The nearest culpable cause was the escape of the spark from the engine."

The judgment is affirmed.

MR. JUSTICE MAGNEY took no part in the consideration or decision of this case.