PETER J. LEE AND OTHERS v. HAVEN LEE
AND ANOTHER.

80 N. W. (2d) 529.

January 18, 1957—Nos. 36,945, 36,946, 36,947.

*Ray G. Moonan* and *John M. Fitzgerald,* for appellants.

*F. J. O'Brien* and *Warren D. Chamberlain,* for respondents.

MATSON, JUDGE.

In each of three separate actions for damages for personal injuries resulting from an automobile collision, consolidated for trial and for hearing upon appeal, we have an appeal from an order denying defendants' motion for a new trial. In each of two of the actions—one brought by Peter J. Lee for himself and one brought by him in behalf of his daughter, Lorna Lee—we have an appeal from an order denying a motion for a vacation of the verdict and for a granting of

a new trial. In the third action, brought by Esther Lee, the appeal is from an order denying a blended motion for judgment notwithstanding the verdict or for a new trial.

Issues arise as to: (1) Whether the trial court erred (a) in directing a verdict against the defendants, Jerome and Haven Lee, on the issues of negligence and proximate cause; (b) in refusing to instruct the jury as to the duty of a driver under M. S. A. 169.61 to dim his lights; (c) and in refusing to withdraw from the jury any issue as to any permanent bladder injury to plaintiff driver; and, (2) a final issue as to alleged misconduct of counsel in arguing to the jury.

The head-on collision between the two automobiles occurred in Dodge County on May 3, 1954, at about 10 p. m., near the crest of a hill on a gravel and crushed-rock township road which runs at the scene of the accident generally east and west. The road is from 17 to 19 feet wide with a one-foot-wide grass shoulder on each side. The automobile traveling in a westerly direction was owned by defendant Haven Lee (hereinafter called Haven) and driven by his 16-year-old son, defendant Jerome Lee (hereinafter called Jerome). In the car with Jerome were three of his pals. The automobile traveling easterly was owned by plaintiff Peter J. Lee (herein called Peter) and driven by his wife, plaintiff Esther Lee (herein called Esther). Plaintiff Lorna, a minor daughter of Peter and Esther, and a girlfriend were riding in the front seat with Esther.

In passing upon the propriety of a directed verdict against the defendants on the issue of negligence and proximate cause, we must take the view of the entire evidence most favorable to the parties against whom the verdict was directed, and such directed verdict will be sustained only if, in the light of that view, it would clearly be the duty of the trial court to set aside a verdict to the contrary as being manifestly against the entire evidence or where a contrary verdict would be in contravention of the law applicable to the case.[1]

---

[1]Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Village of Plummer v. Anchor Cas. Co. 240 Minn. 355, 61 N. W. (2d) 225; Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; 19 Dunnell, Dig. (3 ed.) § 9764.

Defendant Jerome, driving westerly down the center of the road with his lights on high beam and at all times straddling the center of the road, came over the crest of a hill at a speed of 40 or 45 miles per hour. He collided with plaintiff's car at a point which he said was 40 to 45 feet beyond the crest. Plaintiff Esther, who was coming from the west, approached the hill crest at about 35 miles per hour with her lights on high beam. Neither driver saw the other car or its lights prior to the instant that the defendant Jerome came over the hill. Neither driver sounded a horn, dimmed the headlights, or slowed down prior to the actual impact. Defendant said that as he came over the crest he was blinded by plaintiff Esther's lights. Esther testified upon trial that the collision took place from 2½ to 3 car lengths west of the crest, but, upon the taking of a pretrial deposition, she had testified the distance to be ten feet. Esther also testified that she had commenced to turn to her right side of the road when she was about 80 feet from the point of impact and that she was completely on her side when the cars collided. She also said that she did not see the lights of defendant's car until the moment it came over the hill crest and that it was then only about three car lengths away. The entire evidence reasonably leads to only one conclusion, namely, that the collision occurred about a second or less after defendant Jerome came over the crest.

■ Defendant Jerome unequivocally admitted that he approached and went over the hill crest in the middle of the road at undiminished speed and that he did nothing to avoid the collision. He in effect, however, takes the position that his admitted negligence was not, as a matter of law, a proximate cause of the accident since he contends that, if he had not been blinded by Esther's headlights, he would have had the opportunity and ability to take appropriate action to avoid the collision, and that therefore a jury question was presented as to whether Esther's failure to dim her headlights was not an efficient intervening cause which broke the chain of causation between his own negligence and the resulting collision. His theory is based on a corollary to the rule of Christianson v. Chicago, St. P.

M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641, wherein the court said:

"* * * Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

His position is without merit. Assuming in fact that he was blinded by Esther's headlights as he suddenly came over the crest of the hill, so little time remained until the moment of impact that, even if he had not been blinded, he would not reasonably have had sufficient time to do anything to avoid the accident. This holds true whether the point of impact was 10 feet or 45 feet beyond the crest. Another person's negligent act or omission cannot constitute an efficient intervening cause unless it occurs seasonably so as to have sufficient time to take effect. Stated more fully, an act or omission of a second tortfeasor (or actor), as a matter of law, cannot constitute an efficient intervening cause which breaks the chain of causation between the negligence of the original tortfeasor and the resulting accident or collision, when such act or omission occurs so near in time to the happening of the accident or collision that it cannot possibly, in the remaining time interval, have found expression either to stop or break the natural sequence and progression of the original tortfeasor's negligence as a proximate cause. The blinding effect of Esther's headlights, like the speed of the automobile in Cook v. Person, 246 Minn. 119, 74 N. W. (2d) 389, was not a proximate cause of the accident since it is obvious that the sudden and unexpected meeting of the cars just beyond the hill crest would have resulted in a collision even though defendant Jerome had not been blinded by any headlights and had enjoyed unimpaired vision.[2]

[2] A different situation was involved in Olson v. Olson, 238 Minn. 102, 55 N. W. (2d) 706, wherein the decedent driver was in his proper lane until just shortly before the crash when he veered into the other lane under circumstances justifying a factual inference that the undimmed headlights of a truck coming around a curve had momentarily blinded him and caused him

Insofar as the propriety of a directed verdict against defendants is concerned, we need not discuss the skidmark and the location of the debris and the cars after the accident. Such evidence bears upon the question of whether plaintiff Esther was at all pertinent times on her side of the road. The issue as to her contributory negligence was properly submitted to the jury and its verdict in her favor is clearly sustained by the evidence.

■ The trial court did not err in refusing to instruct the jury that § 169.61 requires a driver to dim his headlights so that their rays are not projected into the eyes of an oncoming driver. There is no evidence that defendant Jerome's admitted course of negligent conduct was proximately caused by blinding headlights. Furthermore, as already pointed out, assuming that Jerome was blinded by the headlights when he came over the hill crest, such blindness was caused at a time when it was too late to have any bearing upon the chain of proximate causation. Since there was no causal connection between plaintiff Esther's undimmed lights and the collision, the requested instruction was properly refused. It would have been error to grant the request. It is error to instruct the jury as to the impropriety of alleged acts of negligence in the absence of evidence justifying an inference that they were a proximate cause of the accident since to do so would permit the jury to speculate on a claim of negligence which is immaterial and without evidentiary support as to proximate cause. Novotny v. Bouley, 223 Minn. 592, 27 N. W. (2d) 813.

■ Likewise, the trial court was not in error in denying defendant's request for an instruction withdrawing from the jury any issue as to a permanent injury to plaintiff Esther's bladder. The court charged the jurors that, before they included any amount in the verdict for permanent injury, they must be satisfied to a reasonable certainty as to the existence and extent of such injury. Implicit in this instruction was a negative of any thought that an award could

---

to swerve out of his traffic lane at a time when it was too late for him to regain control. In the instant case, defendant Jerome's continuing acts of negligence were not caused by blinding headlights, and when once he was so blinded it was too late to abandon his prior course of negligent conduct.

be made for a claimed injury where there was no evidence of the permanence of such injury. A new trial will not be granted for refusal to give negative instructions where the substance of such instructions is included in the general charge which fairly and correctly states the applicable law. State v. Becker, 231 Minn. 174, 42 N. W. (2d) 704; see, Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 31 N. W. (2d) 332.

■ We have carefully considered the alleged prejudicial misconduct of plaintiffs' counsel in arguing to the jury. Not all misstatements of evidentiary fact in arguing to the jury constitute prejudicial misconduct. This is particularly true where, as here, the court instructed the jurors to rely on their own recollection if they found any discrepancy between that recollection and the statements of counsel. In this case, plaintiffs' counsel himself gave the same caution to the jurors at the outset of his argument. Likewise, we have considered the jury argument references to opposing counsel and find nothing sufficiently serious to be prejudicial. Whether there should be a new trial for misconduct of counsel rests largely in the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of that discretion.[3]

The orders of the trial court are affirmed.

[3]Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. (2d) 433; Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 282, 58 N. W. (2d) 561, 565; Hardy v. Anderson, 241 Minn. 478, 483, 63 N. W. (2d) 814, 818; Smith v. Barry, 219 Minn. 182, 191, 17 N. W. (2d) 324, 328.